By the Court—Hoffman, J.
The exceptions to the charge and the requests of the defendant’s counsel are first to be noticed.
A defense set up in the answer was, that the vyhole erection of the building had been committed to Bunting, under a contract which gave him full and unlimited control as well as possession of the premises, and thus exonerated the defendant.
The Court .charged that if the jury found that the defendant had made a contract with any one to build the store and do the *144 work, and had given such contractor the possession and control of the premises for that purpose; and such possession and control were existing at the-time of the accident, the defendant was not liable in law.
And again, “if by the contract with Bunting, the defendant had parted with the control of the work while it was going on, and did not interfere with Bunting, then the defendant is not responsible; but if the jury should believe that Bunting was acting as the defendant’s agent, then-he is responsible.”
It would seem' that- the defendant’s counsel excepted to this; and yet if they did, they must be considered as excepting also to that part of the charge stating that if the plaintiff was guilty of any want of care, so as to have contributed to the injury, the defendant was not liable. This is one of four several propositions laid down by the Court, and the exception, as stated in the case, follows the four, and is, “to which ruling of the Court, and each part thereof, the defendant’s counsel excepted ?”
And again, the Judge charged, in the second of those propositions, “ that the j ury was to inquire if there had been any bargain on the part of the defendant to have the work done by contract.” It is not obvious why -the defendant should object to this.
It is probable that the exception was limited to the fourth proposition relating to Adair, and afterwards noticed. But if it went to the whole, we consider that, so far as it respects the defense and case connected with Bunting, or generally as to a contract with any one, the exception is not available.
The principal question arises, on "the following request and charge: -- '■
The defendant requested the Judge to charge the jury, “ that if they should find that a contract had been made with the witness Adair to put up the marble front, and that he was exercising an independent employment under said contract, and the accident was the result of his negligence or that of his servants, the defendant, in law, was not liable; or that if the negligence of Adair’s servants had caused the accident, and the defendant had not the right to choose the said servants, the defendant was not liable in law."
The Judge charged “ that the contract with Adair, as proved, did not affect the right of the plaintiff.”
*145 Adair was a contractor for putting up marble fronts. ■ He made an estimate for the houses in question, and contracted with Bunting, who, as the jury must be taken to have found, was the defendant’s agent.
The estimate of Adair was given in evidence. This he termed his contract with Bunting, to whom he gave the proposition, and who employed him to put up the fronts. The work was done according to the estimate price. The derrick was put up by Urey, a workman of Adair, employed by him for that purpose.
It may be added, that the defendant, on his examination, states that he believes Adair was employed in the erection of the building ; that is, in putting up the marble fronts; that he never gave any directions to the workmen employed; that he never paid any one but Bunting; the latter mentioned to him at several times the names of persons with whom -he had contracted, but did not consult him as to them. We are justified in inferring that Bunting paid Adair.
Board, the carpenter, also states that he did the carpenter’s work on the building, and made his contract for it with Bunting. It was begun in June and finished in November. He did some other work for defendant in the basement, not within his contract.
It is to be assumed, then, that Bunting was the defendant’s agent, through whom he made the various contracts, or employed the different persons to furnish the materials, or do the work. And the case must be treated as if such contracts and employments had been made directly with the different persons by the defendant himself. Thus, when the Judge charged that if the defendant had not been guilty of negligence, the plaintiff could not recover, and that the plaintiff must show negligence, and that the contract with Adair did not affect the right, he must have meant that the negligence of Adair or his servants was that of the defendant.
Thus the case resolves itself into this. An owner employed a skillful builder to select persons with whom to contract for the building of a house, and made, through him, separate contracts, with different persons, for the main portions of the building, with the carpenter, the marble man, and workman for the front, with some others for mason work, &c. He never interfered with or directed the workmen. He did not expressly reserve any right *146 to interfere. Is he responsible for the faults and omissions of all and each of them, causing injury to others ?
The rule of Blake v. Ferris, and the other cases in the Court of Appeals is thus stated by Mr. Justice Jewett, (4 Seld., 226,) “ The doctrine is, that a person who undertakes the erection of a building for his own benefit, is not responsible for injuries to third persons, occasioned by the- negligence of a person or his servant, who is actually engaged in erecting the whole work, under an independent employment or a general contract for that purpose.”
The test appears to be this: - Does the relation of master and servant exist between the person sought to be charged, and the person doing the injury ? And this test is applied by the inquiry, whether the latter is under the control, and subject to the orders of the former, in relation to the performance of the work.
Mr. Justice Habéis in Blackwell v. Wiswall, (24 Barb., 355,) embodies the rule in this short form: “ The only principle upon which one man can be made liable for the wrongful acts of another is, that such a relation exists between them, that the former, whether he be called principal or master, is bound to control the conduct of the latter, whether he be agent or servant. The party sought to be charged must stand in the relation of superior to the person whose wrongful act is the ground of complaint.” The decision hereafter noticed was adopted at General Term.
In Scott v. The Mayor of the City of Manchester, (37 Eng. L. and Eq. R., 495,) the rule was thus stated by Baron Aldebson, “ The person who selects the workmen is the party liable. Commissioners may get rid of liability by making contracts, but if they employ their own servants to do the work, they will be hable for the acts of such servants.”
In Sadler v. Henlock, (30 Eng. L. and Eq. R., 167,) CbomptOjV, Justice, says, “ The real test is, whether the employer has any control over the persons employed ; whether the payment was by the day or the piece can make no difference. The defendant could, during the progress of the work, overlook and direct what was to be done, and the manner of doing it. It is only on the ground of the relation of employer and contractor being differ *147 ent from that of master and servant, than I can understand the authorities.”
Rapson v. Cubitt, (9 Mees. & Wels., 710,) is cited by Mr. Justice Jewett in Pack v. The Mayor. (4 Seld., 226.) Cubitt had contracted with the Clarence Club to make certain alterations in the club-house; among other things to prepare and put up the gas fittings. Hé made a sub-contract with Bland, a gas-fitter, to do that part of the work. Through Bland’s negligence, the. gas exploded, and injured the plaintiff. The Court held, that the action would not lie against Cubitt, but only against Bland. The latter was not Cubitt’s servant.
Two important cases have been determined by the Supreme Court in the third district, that of Blackwell v. Wiswall, (24 Barb., 355,) and Norton, adm., v. Wiswell. (26 id., 618.) They arose out of the same state of facts. The defendant had a license to run a ferry, from the proper public authority. One Morrison was the lessee of the licensee at a yearly rent. A boatman in his employ upset a boat, by which the plaintiff’s intestate lost his life. The negligence of the ferryman was the cause. The direction and management of the ferry was entirely in Morrison. It was held that the defendants were not liable. Judge Hogeboom in the latter case goes through the authorities with great care. He says: “ Where one is the master or principal of another he is responsible for his acts, because he has conferred authority upon the latter to do the act, and because he has the power and the legal right to do the act.” And he applies this rule to the facts of the case thus: “ The servants of the lessee were not his" (the defendant’s) “servants. He cannot control them. He cannot give them orders which they are bound to obey. Having no authority over them, and having conferred no power upon them, he is not responsible for their acts. He stands in no relation to them which makes applicable to him the maxim respondeat superior.”
The learned Judge analyses the case of Congreve v. Morgan, in this Court, (5 Duer, 495,) and shows the various points of distinction between it and cases of the character now considered.
In Gourdier v. Cormack, (2 E. D. Smith, 254,) the Court of Common Pleas applied the doctrine of Blake v. Ferris to the case of an injury from blasting done by a contractor, who by the agree *148 ment had assumed the work with the manner of performing it. The owner had no control or superintendence.
A question not unlike the present is adverted to in McCleary v. Kent, (3 Duer, 27-35,) thus, whether a contractor for an entire building may relieve himself from all liability for the negligent acts or omissions of laborers, by parcelling out-the work to subcontractors in distinct jobs was a question not arising; that the' principle of Blalce v. Ferris would not require the Court to go to that extent, and it was not .a decision they would be willing to make. ■
Yet, when we once arrive at the principle that employment, control, and supervision, or the right to such, over the person whose neglect was the immediate cause of the injury, is to test all these cases, the logical result seems inevitable, that such rule is as applicable to contracts for distinct portions of a building as to a contract for the whole. Why, if a contract with a mason, and another with a carpenter, covers the whole erection, and each has the sole authority to employ and direct the sub-workmen in his particular department, why should the owner be responsible for the faults of. their respective workmen and be exempt had he committed the whole erection to one of them ? I have not been able to discern a solid reason for such a distinction.
The question whether a defendant has the power of employment and control, may be one of mere law or of a mixed character. Where, as in Back v. The Mayor, &c., it depends upon a written contract, it is merely one of law. In other cases, the acts of the party may interpret the contract. Instances of direction and interference may determine the true relation. The question is to be solved upon the facts.
It may be strictly right, however, to state two propositions, one, that the mere omission to interfere is not decisive in favor ■of an owner. The power to interfere may be enough. The counsel in Norton v. Wiswall, {supra,) asked the Court to charge this; and, next, that presumptively a contract for the entire performance of a given portion of a building, raises a presumption of control in the contractor, and of its being surrendered by the owner. The idea of a contract with a mason, for example, that he should perform the entire mason work and supply the mate-trials, appears from its very nature to create in him the responsi *149 bility, and hence to confer the authority. He is liable for the faithful fulfillment of his agreement. Entire direction and choice of servants is necessary for this. Interference might disable or embarrass him in that performance.
It seems to me that there was error committed upon the trial. Either the learned Judge should have treated the-contract with Adair as a defense, or should have left some such question to the jury as the counsel for the defendant requested him to do.
Judgment reversed. Hew trial ordered. Costs to abide the event.